Argued September 19, affirmed October 22, on petition for rehearing
        former opinion sustained December 17, 1918.

## SMITH *v.* BOOTHE.

(175 Pac. 709.)

**Judgment—Conclusiveness—Res Judicata—Matters Concluded.**

1. Facts identical with those relied on as a cross-complaint in a
prior suit, wherein the complaining party drew up the decree, *held*
concluded between the parties.

**Judgment—Res Judicata—Matters Concluded.**

2. A judgment upon the merits is a bar to a subsequent action
between the same parties on the same claim, both as to matters
that might have been as well as those that were actually litigated.

### ON PETITION FOR REHEARING.

**Fraud—Opinion—Worth of Property.**

3. Statements by purchasers of mortgage, attorneys for mort-
gagors, that premises were not worth more than was due them, and
that they had procured all rights and title of mortgagors, made to
mortgagors, were mere matters of opinion, not constituting action-
able fraud.

**Fraud—Unactionable Threat or Bluff.**

4. Statement by purchasers of mortgage, attorneys for mort-
gagors, to the mortgagors, that they, the purchasers, had been dam-
aged in reputation and would not permit redemption after foreclosure·
by them without paying damages in addition to money required to
redeem, was a mere threat, not constituting actionable fraud on the
mortgagors.

**Fraud—Allegations—Sufficiency of Evidence to Sustain.**

5. In suit by mortgagors against attorneys, purchasers of mort-
gage, who foreclosed, and, as it was alleged, by false statements pre-
vented mortgagors from securing money to redeem, evidence *held*
insufficient to sustain allegations, having shown merely that defend-
ants stood on legal rights as purchasers at execution sale under
decree in foreclosure suit.

**Judgment—Merger—Nature of Relief.**

6. Where attorneys purchased a mortgage and foreclosed, mort-
gagors being their clients, and court in foreclosure decree executed

trust in favor of mortgagors arising from confidential relation, by setting aside deed procured by attorneys, and declaring mortgagors to be owners, subject to lien of mortgage, confidential relation of attorneys and its abuse was merged in the decree.

**Attorney and Client—Fiduciary Relation—Purchase of Mortgage by Attorneys.**

7. Attorneys could buy and foreclose mortgage executed by clients, where they did not purchase at discount and undertake to charge clients for full face of mortgage.

[As to contracts of attorneys which are void as against public policy, see note in 13 Am. St. Rep. 297. See, also, note in 139 Am. St. Rep. 598.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.

The history of this case, so far as it is of interest here, is about as follows: In the month of June, 1912, the defendant William P. Richardson purchased from Lucy A. Lumsden a promissory note secured by mortgage on certain real property executed by the plaintiffs herein, and in the same month began a suit to foreclose the same. These plaintiffs filed an answer to the complaint in foreclosure, wherein they allege that Richardson is an attorney at law, and that in April, 1912, they, being unable to meet the payments due upon the aforesaid note, which was for the sum of $10,000, employed him to negotiate a new loan for them in the sum of $15,000, payable three years later; that having undertaken the employment, he represented to them that in order to get the title of the realty into such shape that a loan could be secured, it would be necessary for them to convey the legal title to a party to be named by him, which was done, the deed running to one Edith King; that at the time of making such conveyance Richardson paid to them the sum of $2,000, explaining that such sum was a part of the new loan he had secured for them, and that the remainder would be applied to the payment of the prior

mortgage, accrued interest, and taxes; that just prior to the execution of the aforementioned conveyance, they were served with copies of the summons and complaint in the foreclosure suit, and that Richardson then represented to them that the suit was merely a step in the process of clearing the title to the premises and would not affect their rights thereto; that he now asserts title to the property through the conveyance to Edith King, who, it is asserted, holds the title for his convenience. They then allege the falsity of the representations so made, and their reliance upon them, and conclude with the following prayer:

"Wherefore, these defendants and cross-complainants pray and that this court will decree:

"1. That these defendants and cross-complainants, Emma A. Smith and Mary J. Cole, are the owners in fee simple of said premises.

"2. That said plaintiff and Edith King hold the legal title so vested in them as security only for the repayment of said Two Thousand Dollars, interest and taxes, if any, paid by them.

"3. That should the court find that said plaintiff is the owner and holder of the note and mortgage set out in his complaint, that the transfer of said note and mortgage to him, together with the conveyance to him by said Bank & Trust Company and the conveyance by these defendants to Edith King, constitute but one instrument intended as, and declared to be, a mortgage to secure the payment of said new loan agreed to be secured by said plaintiff, and that the amount of said new loan be decreed to be the principal amount represented by note and mortgage set out in plaintiff's complaint, plus the interest due thereon, plus the taxes paid, if any, plus the said Two Thousand Dollars paid defendants by plaintiff, and that the terms of said new loan run three years from June 18, 1912, with interest at eight per cent per annum, and that plaintiff be denied the right to foreclose said mortgage set out in his complaint at this time and his suit dismissed.

"4. That the rights and interests of said purchasers be fully protected as their respective equities may appear; and to reform said instruments.

"5. That said defendants, L. D. Mahone, W. Bullis, M. L. Hamitt, Mrs. J. F. McKinney, W. G. Bohn, American Bank & Trust Company, and Will Wright, Superintendent of Bank, G. A. Schwartz, and cross-defendants, Quartz Gold Mining Company, a corporation, and F. P. Tobin, receiver of Mount Scott Bank, a corporation, have no right or interest in or to said premises.

"6. That these defendants and cross-complainants be given such other and further relief as may appear just and equitable in the premises."

To this answer there was a reply filed denying the affirmative matter, and pleading further as follows:

"1.   That prior to the time the plaintiff purchased said note and mortgage, he had informed these defendants that he was intending to purchase the same and notified them that he would foreclose said mortgage unless the interest was paid, whereupon said defendants said they could not pay the interest or make any payment thereof, but urged the plaintiff to find a purchaser for their interest in said premises, and in order to make suitable provision for the execution of a deed of conveyance to such purchaser as the plaintiff should find for said premises, on or about the 12th day of June, 1912, said defendants authorized the American Bank & Trust Company of Oregon and Will Wright, Superintendent of Banks, in charge of the liquidation of said American Bank & Trust Company of Oregon, to make, execute and deliver a good and proper deed of conveyance of said real estate to the plaintiff, but such deed to be so executed by said American Bank & Trust Company and Will Wright as Superintendent of Banks, was to be held by these defendants until such time as the plaintiff might find a purchaser for said property so that upon making a sale, the plaintiff could be in a position to convey the said lands to such pur-

chaser, but said deed was not executed by said American Bank & Trust Company of Oregon and Will Wright, Superintendent thereof, until the 25th day of June, 1912, seven days after the execution of the deed by these defendants to Edith King, the purchaser of said premises, as hereinafter mentioned.

"2. That after authorizing the American Bank & Trust Company and Will Wright, Superintendent of Banks, in charge of liquidation of said bank, to execute said note of conveyance to the plaintiff, said defendants, Emma A. Smith and Mary J. Cole, together with one Thomas H. Ruddy, their attorney in fact, repeatedly called upon the plaintiff and urged him to find some one who would be willing to buy their interest in said property. And in accordance therewith the plaintiff procured a purchaser, namely: Edith King, who was willing to pay said defendants the sum of $2,000 for all their right, title and interest in and to said premises, subject to the mortgage thereon. That after finding said purchaser the plaintiff discovered that these defendants had not conveyed the property belonging to them and described in said mortgage to said American Bank & Trust Company, and informed the defendants that in addition to the deed so authorized by them to be made by the American Bank & Trust Company of Oregon and Will Wright, Superintendent of Banks, in charge of liquidation of said Bank, the said Edith King would require a deed of conveyance direct to her from these defendants, and in accordance therewith and with a full knowledge of all the facts and circumstances and with the advice of their attorney, Thomas H. Ruddy, said defendants on the 18th day of June, 1912, executed and delivered to said Edith King their deed of conveyance of said property, conveying to her all their right, title and interest in and to said property and every part thereof for the consideration of $2,000, which was then and there paid to them by the said Edith King."

Thereafter a trial was had, resulting in a decree of which the following is a part:

"The above-entitled cause having been heretofore regularly tried, and the court having made and filed its Findings of Fact and Conclusions of Law, Now therefore on motion of Geo. D. Young, attorney for Emma A. Smith and Mary J. Cole, defendants, and cross-complaints, it is ordered, adjudged and decreed, as follows: * *

"4. That the deed made by Emma A. Smith, Mary J. Cole and Chester Cole on the 18th day of June, 1912, to defendant Edith King, now Edith Richardson, which deed on the 19th day of June, 1912, was recorded in Book 590 at page 144, Records of Deeds of Multnomah County, be and the same is hereby set aside, and

"It is further ordered, adjudged and decreed that the plaintiff and the defendant Edith Richardson convey to the said Emma A. Smith and Mary J. Cole, all right, title and interest conveyed to plaintiff by the said American Bank & Trust Company, and by plaintiff conveyed to defendant Edith King, and also all right, title and interest conveyed to defendant Edith Richardson, and also all right, title and interest conveyed to plaintiff conveyed to defendant Edith King, and also all right, title and interest conveyed to defendant Edith Richardson, by a deed made on June 18, 1912, when the said Emma A. Smith and Mary J. Cole shall pay to the plaintiff herein the sum of $2,000 with interest thereon at 6 per cent from the 18th day of June, 1912, provided the said Emma A. Smith and Mary J. Cole shall make payment of said sum of $2,000 and interest to the plaintiff within fifty days from date of this decree.

"5. That Emma A. Smith and Mary J. Cole are the owners of the land described as follows:

"Beginning at a stone 1320 feet West of the Northeast corner of Section 2, Township 1 South of Range 3 East of the Willamette Meridian; thence South 1870.5 feet to a stone; thence West 455 feet to an iron pipe; thence South 324.7 feet to a stone; thence West 1442.8 feet to an iron pipe; thence North 2190.9 feet to an iron pipe on Base Line; thence East 1869.0 feet along Base Line to the place of beginning, containing 91.8

acres, situate and being in the County of Multnomah, State of Oregon; and that defendant, Edith King, is not the owner of said real estate or any part thereof.

"It is further ordered, adjudged and decreed that the ownership of said land is vested in said Emma A. Smith and Mary J. Cole subject to a mortgage made to Lucy A. Lumsden to secure the sum of $10,000.00 with interest at eight per cent from the 7th day of December, 1910, and the taxes on said premises for the year 1911, to the amount of $147.80 with interest thereon from the 15th day of June, 1912, and subject to the payment of $2,000.00 and interest thereon at six per cent from the 18th day of June, 1912; that said sums of $10,000.00 and interest, $147.80 and interest, and $2,000.00 and interest are payable to the plaintiff herein.

"6. That the said Emma A. Smith and Mary J. Cole shall pay to the plaintiff the sum of $2,000.00 with interest thereon from the 18th day of June, 1912, and shall make said payment within fifty days from the date of this decree, and

"It is further ordered, adjudged and decreed that if the said Emma A. Smith and Mary J. Cole shall fail or neglect to make payment of said sum of $2,000.00 and interest within the time above provided, then the same shall be and hereby is decreed to be a lien upon the following-described real estate, to wit: Beginning at a stone 1320 feet West of the Northeast corner of Section 2, Township 1 South of Range 3 East of the Willamette Meridian; thence South 1870.5 feet to a stone; thence South 324.7 feet to a stone; thence West 1442.8 feet to an iron pipe; thence North 2190.9 feet to an iron pipe on Base Line; thence East 1869.6 feet along Base Line to the place of beginning, containing 91.8 acres, situate and being in the County of Multnomah, State of Oregon, and said lien is hereby decreed to be subject only to the lien of said mortgage for $10,000.00 and interest, said sum of $147.80 and interest, and to the contract rights of the defendants William Hull, Cedric McIntyre, P. Beckler, H. E. Werner, E. W. Moore and A. A. Graham, and

"It is further ordered, adjudged and decreed that if the said Emma A. Smith and Mary J. Cole shall fail or neglect to pay said $2,000.00 and interest within the time provided in this decree then the plaintiff may be, and shall be entitled to a decree, foreclosing said lien for $2,000.00 and interest, and that the said sum shall be paid to the plaintiff out of the proceeds of the sale of said premises after the payment of the $10,000.00 mortgage and the taxes aforesaid. * *

"10. That the plaintiff have and recover judgment against the defendants Emma A. Smith, Mary J. Cole and Chester Cole for the sum of $10,000.00 with interest thereon at eight per cent from the 7th day of December, 1910, and for the further sum of $147.00 for taxes with interest thereon from the 15th day of June, 1912, and that the mortgage made by said Emma A. Smith, Mary J. Cole and Chester Cole to Lucy A. Lumsden be foreclosed, and that the premises described in said mortgage, to wit: Beginning at a stone 1320 feet West of the Northeast corner of Section 2, Township 1 South of Range 3 East of the Willamette Meridian; thence South 1870.5 feet to a stone; thence West 455 feet to a stone; thence West 1442.8 feet to an iron pipe; thence North 2190.9 feet to an iron pipe on Base Line; thence East 1869.6 feet along Base Line to the place of beginning, containing 91.8 acres, situate and being in the County of Multnomah, State of Oregon, be sold to satisfy the said sum of $10,000.00 and $147.80 with interest, as aforesaid, and

"It is further ordered, adjudged and decreed that the plaintiff is not entitled to issue execution upon this decree until after the expiration of fifty days from the date of this decree, the same being the number of days fixed within which said Emma A. Smith and Mary J. Cole shall pay to the plaintiff said sum of $2,000.00 with interest from June 18, 1912.

"12. It is further ordered and decreed, that plaintiff do not recover costs or disbursements of or from defendants or any of them, and that defendants and cross-complainants do not recover costs and disbursements from plaintiff or defendant Edith Richardson,

and that no costs or disbursements be awarded to any party to this suit."

Thereafter, on October 6, 1915, these plaintiffs, who were defendants in the foreclosure proceedings, began this suit by filing their complaint in which it is alleged that in December, 1910, they mortgaged certain real property which is described, to Lucy A. Lumsden, to secure the payment of a promissory note for the sum of $10,000; that the equity and interest of plaintiffs in the property was and is worth $18,000 over and above all encumbrances and adverse claims thereto. It is then alleged that in the month of February, 1912, plaintiffs employed the defendants to secure for them a new loan of $15,000 in order to pay off the Lumsden debt; that defendants accepted the employment, and undertook, as the agents and attorneys of plaintiffs to attend to the matter and to charge a reasonable price for their services; that thereafter, between February, 1912, and June 18, 1912, defendants conspired together to cheat and defraud plaintiffs, by purchasing the Lumsden mortgage for their own benefit and foreclosing it, and pretending that the foreclosure was a step in the process of negotiating the new loan of $15,000, and by preventing a redemption from foreclosure sale, secure a sheriff's deed and dispose of the same for their own benefit; that on July 15, 1912, in violation of their duty as attorneys and agents of plaintiffs, they purchased the Lumsden note and mortgage, without informing plaintiffs of such action, and never informed plaintiffs that they were the owners thereof, or had any interest therein adverse to plaintiffs; that on June 15, 1912, they informed plaintiffs that it was necessary for plaintiffs to convey their title and interest in the premises to some one person for the purpose of clearing the title and that their rights

would thereby be protected and it would render it possible to negotiate the new loan; that relying upon such representations, they conveyed the premises to Edith King, now Edith Richardson, wife of defendant Wm. P. Richardson; that at or about the time of said conveyances, and the purchase of the Lumsden mortgage by defendants, the latter began a suit to foreclose such mortgage, and on July 18, 1912, plaintiffs were served with summons and complaint therein, at the office of defendants, who at that time represented to them that the foreclosure was merely a matter of form which was necessary in order to procure the new loan, and at the same time paid to plaintiffs the sum of $2,000, representing that it was a part of the new loan and that the remainder of such loan would be accounted for to plaintiffs after paying off the Lumsden mortgage, taxes, interest, and expenses. It is then averred that all of these representations were false and fraudulent, in that it was not necessary to the negotiation of a new loan that the conveyances mentioned should have been made, and the foreclosure of the mortgage was not begun in order to clear the title, or to assist in making a new loan, but that such foreclosure was had as a part of the conspiracy to secure plaintiffs' equity in the property. These allegations are followed by the further averments that in the foreclosure suit it was found and adjudged that the defendants were acting as attorneys for the plaintiffs at the time of the purchase of the mortgage and the institution of the foreclosure suit, and that defendants acted in bad faith toward plaintiffs therein, and it was adjudged that on account of defendants' fraud and deception they were not entitled to recover attorney's fees or costs, but that they were entitled to recover the actual amount expended

by them in the purchase of the mortgage, together with the $2,000 advanced by them to the plaintiffs.

The findings of fact, conclusions of law, decree, and the answer and cross-complaint in the foreclosure proceeding are attached to the complaint herein and made a part thereof. After the above-mentioned recitals we find the following allegations:

"That after the entry of said decree and during the period of redemption, the plaintiffs undertook to redeem said premises from said foreclosure sale, and for that purpose procured a number of persons who were ready, able and willing to redeem said premises and furnish the necessary money to the plaintiffs to make said redemption and the plaintiffs would have made said redemption and could have made said redemption but were prevented from so doing by the repeated and continued misrepresentations and deceit of the defendants, pursuant to said plan of the defendants hereinbefore referred to, which misrepresentations and deceit on the part of the defendants are as follows:

"That the defendants falsely, during said period of redemption, stated to these plaintiffs and to other persons hereinafter named and to other persons not hereinafter named, whose names are to these plaintiffs unknown but as plaintiffs have been informed and believe, to wit: That said premises were involved in litigation, and that said premises were not worth more than was due to the defendants; that a redemption could not safely be made because other persons besides these plaintiffs claimed to be the owners of certain equities and interests which it was impossible to determine; that the title was involved in doubt and uncertainty; that the reputation of the defendants had been injured in said foreclosure suit and the defendants would not permit the plaintiffs to redeem said premises without paying a large amount of money by way of damages to the defendants in addition to the money required to redeem said premises, and if a redemption were attempted to be made by the plaintiffs the defendants

threatened to appeal or to involve said title and said premises in further litigation so that no redemption could be made; that the defendants had procured all the rights and title of plaintiffs and had settled with the defendants and there was no redemption to be made; which said statements were false and were made fraudulently by the defendants, but were believed by the persons to whom they were made and the defendants thereby dissuaded said persons from furnishing the money with which to redeem and prevented these plaintiffs from making said redemption.

"That said misrepresentations were made to these plaintiffs and to Dorr E. Keasey, E. E. Moore, William Hull, J. G. Hamilton, E. A. Lundberg, L. E. Palmer, a Mr. Thomas, a Mr. Cleveland, and a Mr. Young, whose full names are unknown to plaintiffs, and to others whose names are not known to plaintiffs; some of said false statements being made to some of said persons and others to others of said persons.

"That said misrepresentations were made orally at the office of the defendants in the Board of Trade Building in Portland, Oregon, so far as plaintiffs are now informed, at various days and times between the date of said decree and April 9, 1914. Said misrepresentations were made in the presence of these plaintiffs and of the persons above named, and to others not known by plaintiffs."

There are also recitals of the issuance of the sheriff's deed, the subsequent transfer of title to one Reid, a demand for the payment of $18,000, as the excess value of the property over the amount of defendants' interest therein, followed by a prayer for an accounting. To this complaint defendants filed a demurrer upon these grounds:

"1.   That said complaint does not state facts sufficient to constitute a cause of suit.

"2.   That the court is a court of equity and has no jurisdiction of the subject matter thereof.

"3.   That there is an improper joinder of causes in that there is an attempt to allege on the one hand a

cause of suit, and upon the other hand a cause of action for alleged slander of title.''

This demurrer was overruled, and defendants answered denying all of the allegations of fraud and deceit and alleging affirmatively that prior to any transactions between plaintiffs and defendants, plaintiffs had disposed of a great many lots or parcels of the land under contracts of sale, and upon deferred or installment payments, the rights under which were subordinate to the Lumsden mortgage, but paramount to plaintiffs' rights; that the equity of the plaintiffs at that time had small market value and they were eager to sell it for $2,000, and that it was then distinctly understood that defendants' payment of $2,000 for the legal title was dependent upon their securing and foreclosing the Lumsden mortgage, since in no other way could a valid and valuable title be obtained. The proceedings in the foreclosure suit are admitted as alleged in the complaint. The answer concludes as follows:

''In this connection these defendants further aver and allege, that the decision of the court in said cause was announced October 28th, 1912; that for the purpose of giving the plaintiffs in said suit every opportunity to make redemption of the premises from the foreclosure sale adjudged by the decree aforesaid, the Findings of Fact and Conclusions of Law, and the decree in said foreclosure suit was not signed and entered until January 3d, 1913; and by the terms of said decree executed thereon was stayed for a period of 50 days after the entry thereof. The decree not having been satisfied by the plaintiffs in this suit prior to the time fixed when execution might issue, execution was duly issued upon said decree, and under and by virtue of said decree, and the execution issued thereon, and on or about the 31st day of March, 1913, the said premises were duly and regularly sold, to satisfy the amount due upon the aforesaid mortgage, interest and costs, and conformably to the requirements of said decree;

and the said sale having been duly reported to the Court, on or about April 8th, 1913, the said foreclosure sale was duly and regularly confirmed by the court; that a sheriff's certificate of sale was duly and regularly issued; that the defendants became the purchasers of said foreclosure sale as by law, and the said decree, they were authorized so to do. That no redemption was made by the plaintiffs, or by anyone in their behalf, and no offer, effort or attempt to redeem was made by the plaintiffs, or anyone in their behalf, so far as these defendants were ever advised; that the period allowed by law for redemption having expired, a sheriff's deed, as by law provided, was issued to these defendants."

A reply having been filed, a trial was had, resulting in a decree for defendants, from which plaintiffs appeal.                                                      AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Frederic H. Whitfield.*

For respondents there was a brief over the names of *Mr. M. H. Clark, Mr. A. E. Clark* and *Mr. C. A. Johns,* with an oral argument by *Mr. M. H. Clark.*

BENSON, J.—1. We are clearly of the opinion that the demurrer to the complaint should have been sustained. A comparison of the complaint herein with the cross-complaint of these plaintiffs as defendants in the foreclosure suit, discloses at a glance that the facts upon which they relied in the former proceeding are practically identical with those upon which they base their claim for relief herein. The former case was a suit in equity, wherein they called upon the court to make a decree in which should be adjudicated between themselves and the defendants, all of the questions and controversies growing out of the same trans-

actions which they now set out in their initial pleading. At the conclusion of the trial of that contest, they, by their counsel, moved the court for the decree which they obtained. That decree establishes the ownership in the defendant Richardson of the Lumsden mortgage, not as a trustee for these plaintiffs, but as the absolute owner. It further determines his right to a repayment of the $2,000 which he had paid to plaintiffs, and also awards him the process of the court for the collection of these claims by ordering an execution and sale thereon.

Not a single act is alleged as occurring after the trial of the foreclosure suit, except the alleged conduct of the defendants in slandering the title to the real property, and thereby preventing a redemption. As to this phase of the case it may be said that the plaintiffs expressly disclaim any effort or intent to proceed herein as for slander of title, and if it were otherwise, the allegations in relation thereto are wholly insufficient to justify any recovery upon that theory.

2. The law is well settled that a judgment or decree rendered upon the merits is a bar to a subsequent action or suit between the same parties upon the same claim, as to every matter that was or might have been litigated in the action in which it was obtained: *Colgan* v. *Farmers & Mechanics' Bank,* 69 Or. 357 (138 Pac. 1070), and cases there cited.

Appellant urges the consideration of many authorities upon the subject of an attorney's duty to employ the utmost good faith in his dealings with a client's property, but that subject is not before us.

We have read the evidence in this case with great care, but see no necessity for discussing it, further than to say that if the testimony of the plaintiffs themselves, in cross-examination, had been before the court

in the trial of the foreclosure suit, it could never have found that defendants had been guilty of any bad faith.

The decree of the lower court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.

---

Former opinion sustained December 17, 1918.

ON PETITION FOR REHEARING.

(176 Pac. 793.)

Former opinion sustained on petition for rehearing. Rehearing denied.

*Mr. Frederic H. Whitfield,* for the petition.

*Mr. A. E. Clark* and *Mr. M. H. Clark,* opposed.

BURNETT, J.—Careful consideration has been given to the petition for rehearing filed by the plaintiffs attacking an opinion written by Mr. Justice BENSON affirming the decree of the Circuit Court in this suit. It will be recalled that originally the plaintiffs were the owners of a tract of land in Multnomah County which they platted into smaller subdivisions, and for the purpose of more expeditiously marketing the lots, conveyed the whole property to a trust company with power to execute and deliver contracts and deeds to purchasers. All this property was subject to a prior mortgage of $10,000 held by Lucy A. Lumsden. Sundry contracts for sale had been issued and partial payments made thereon, which the plaintiffs received to their own use. The defendant Richardson acquired

the Lumsden mortgage by purchase and proceeded to foreclose the same. Defending against that suit, the plaintiffs here narrated the history of their property substantially as already stated, and averred that they had applied to the defendant Richardson and his partner as attorneys to negotiate for them a loan of $15,000 with which to take up the mortgage in suit; that the attorneys conspired to cheat and defraud the present plaintiffs, the then defendants, out of their property and to that end stated to them it would be necessary for them to cause the trust company to convey to some designated person the title to the property; that the then defendants, plaintiffs here, should also convey their interest and that it would be requisite also to foreclose the mortgage. Agreeing to this under the influence of those representations, the plaintiffs here made such conveyance to a designated grantee, Edith King, upon payment to them of $2,000, which the attorneys, as the present plaintiffs claim, said was part of the loan of $15,000 then being negotiated. The defendants here denied the confidential relation and claimed that the present plaintiffs sold to them their equity of redemption in the property for the sum of $2,000. That foreclosure case was heard and the trial court made findings of fact substantially as the defendants had answered. Thereafter a decree was entered setting aside the deeds mentioned and decreeing the present plaintiffs to be the absolute owners of the land, subject, however, to the $10,000 mortgage and to the repayment by the plaintiffs herein of the $2,000 they had received. These sums with interest were impressed upon the land as liens, with the usual foreclosure order providing for a sale to enforce the same in default of payment. The findings of fact and conclusions of law were filed October 28, 1912, but entry of the decree

was postponed to January 3, 1913, and its terms stayed
the issue of execution for fifty days thereafter. The
land was sold under execution issued on the decree
March 31, 1913, no attempt having been made to pay
the amounts impressed upon the property as liens in
favor of the attorneys, and the sale was confirmed
April 8, 1913. No redemption having been made, the
sheriff's deed was executed, delivered and recorded
April 9, 1914.

The present complaint, after reciting all of these
matters, avers:

"That the defendants falsely, during said period of
redemption, stated to these plaintiffs and to other per-
sons hereinafter named and to other persons not here-
inafter named, whose names are to these plaintiffs
unknown but as plaintiffs have been informed and be-
believe, to wit: That said premises were not worth
more than was due to the defendants; that a redemp-
tion could not safely be made because other persons
besides these plaintiffs claimed to be the owners of
certain equities and interests which it was impossible
to determine; that the title was involved in doubt and
uncertainty; that the reputation of the defendants had
been injured in said foreclosure suit and the defendants
would not permit the plaintiffs to redeem said premises
without paying a large amount of money by way of
damages to the defendants in addition to the money
required to redeem said premises, and if a redemption
were attempted to be made by the plaintiffs the de-
fendants threatened to appeal or to involve said title
and said premises in further litigation so that no re-
demption could be made; that the defendants had
procured all the rights and title of plaintiffs and had
settled with the defendants (plaintiffs) and there was
no redemption to be made; which said statements were
false and were made fraudulently by the defendants
but were believed by the persons to whom they were
made and the defendants thereby dissuaded said per-
sons from furnishing the money with which to redeem

and prevented these plaintiffs from making said redemption."

It is further charged in the complaint that after procuring the sheriff's deed, the defendants sold the realty to another party, thus depriving the plaintiffs of their property and its value in the sum of $18,000. They pray for an accounting for the profits realized by the defendant attorneys.

3, 4. In passing, it may well be doubted whether the allegations of fraud are sufficient upon which to base a suit. In a certain sense, the premises were indeed involved in litigation. They had been sold and the time for redeeming from the sale had not expired, and disputes about the redemption were liable to arise in that very proceeding. That the premises were not worth more than was due the defendants was a matter of opinion, which has constantly been held not to be fraudulent. Besides, the accuracy of that opinion had been demonstrated by the test of the sheriff's sale. It is plain that one redeeming the property would succeed to the estate of the plaintiffs, encumbered by their responsibility for the contracts which had been issued for the sale of the smaller tracts. This of itself would involve the title in doubt and uncertainty. The averment about the damage to the reputation of defendants and of not permitting a redemption of the premises without paying damages in addition to the money required to redeem the premises, was a mere threat or bluff. It does not amount to a representation of fact. The same may be said of their threat to appeal or to involve the title in further litigation. That the defendants had procured all of the rights and title of plaintiffs was a mere opinion as to the effect of the decree in the foreclosure suit and the sale in pursuance thereof.

5. Ignoring this, however, we again have carefully read all of the testimony in our quest for the merits of the case. The plaintiff Mrs. Smith testifies that she interviewed the defendant Richardson only and him but twice. The first time was in company with her agent and attorney in fact, one Ruddy, in January, 1914, during the fifty days' stay of execution, when no one could know who would be the purchaser. We remember also the averment of the complaint that the alleged fraudulent statements were made during the period allowed for redemption, viz., after the sale. The next time was on April 10, 1914. She is very definite and positive in fixing this date, because as she says it was her mother's birthday, and she claims that at that time the defendant made some such representations as she sets forth in her complaint. This could not have influenced the case, because the representations were made the day after the issuance of the sheriff's deed; in other words, after the time for redemption had expired. She says that the only individuals she had a chance to obtain money from with which to redeem were three different men: Cronan, Griffin and Palmer; yet the testimony fails to show that either of these men, or she for them, ever offered to redeem or approached the defendants in any manner whatever. She frankly said as a witness that she had no money and offered none. She further testified that within three or four days after she and her coplaintiff had executed the King deed and had received the $2,000, the defendant Richardson called her by telephone, and told her he had heard she was dissatisfied and that if she would return the money he would gladly give back the deed. Meanwhile, however, the plaintiffs had given part of the money to Ruddy and could not return it.

It seems that one Moore was one of the parties who had contracted to purchase part of the land prior to the foreclosure suit. During the period of redemption and against the protests of Richardson, Moore had built a house on the tract, thinking that probably it would be redeemed and he would have an opportunity to complete his purchase. Some of his friends, members of a fraternal order, thinking that he had acted unwisely and was in danger of losing not only what he had invested and which was foreclosed by the decree to which he was a party, but also his building, formed themselves into a voluntary committee and went to interview the defendants to persuade them to allow Moore to pay up the balance due on the contract and take conveyance from them of his tract prior to redemption. One of these parties was a man named Hamilton, who appeared as a witness for the plaintiffs. He says he had but one interview with the defendants and that only at the time the committee visited them. He narrated substantially that Richardson declined to do anything for Moore during the redemption period. Whereupon Hamilton said, "Then we will redeem." Richardson asked him how much it would require for that purpose and Hamilton informed him that as he had computed it from the record it was in the neighborhood of $13,600. Whereupon Richardson said it would take $3,000 or $4,000 more for money which he had advanced to the plaintiffs. Richardson flatly denies all this testimony of Hamilton. It appears in evidence that Hamilton had taken an option from the plaintiffs to buy the property and to redeem it, paying to them at the time and afterward certain amounts specified. His testimony is weakened considerably by the fact that his contract, introduced by the plaintiffs as one of the exhibits, contains his own recital that it would require $16,000 to effect redemption. It is fur-

ther weakened by the testimony of the other members of the committee, who were present at the time, not one of whom says that Richardson demanded more for redemption than the amount provided by the statute. More than all that, the amount required for redemption was a matter of record and no one had the right to act upon or be deterred from redemption by any such language of Richardson even if he used it. The witness Keasey, one of the committee, declares Richardson said he did not want to sell and did not think the title could be delivered without foreclosure to wipe out the contract claimants. The witness Lundberg, in substance, testified that the defendants would not sell to Moore the three acres during the redemption period. Another member of the committee, Mr. Deitz, said Richardson declared he could not do anything until the time for redemption had expired. George Thomas, another man who went there in Moore's interest, said that Richardson claimed the defendants were not in possession or in position to say what they would do, but did not encourage the committee to think they would sell three acres to Moore, as it might interfere with a future sale. The defendants as witnesses in their own behalf explicitly deny making any statement derogatory to the title.

On the merits of the present complaint and on the theory that it states a cause of suit, the testimony does not sustain the allegations of the complaint. The defendants simply stood on their legal rights as purchasers at the execution sale under the decree in the foreclosure suit. The rights of the plaintiffs as redemptioners were fixed by the statute as it then stood. Section 248, L. O. L.:

"The judgment debtor, or his successor in interest, may, at any time prior to confirmation of sale, and also within one year after the confirmation of sale, redeem

the property on paying the amount of the purchase money, with interest thereon at the rate of ten per centum per annum from the date of sale, together with the amount of any taxes the purchaser may have been required to pay thereon.''

The plaintiffs and the defendants were concluded by the decree in the foreclosure suit. All the former had to do was to pay the decree, for which a respite of fifty days was given them not counting the interval between the announcement of the decision and the entry of the decree. Afterward and until a year beyond confirmation of sale they could have given notice to the purchasers of their intention to redeem, and paid the required amount to the sheriff who made the sale, despite anything the defendants said.

The true state of the affair on the facts, as we think, is succinctly narrated in the testimony of George Thomas:

''Then I took the matter up with Mr. Manley and we went over to Boothe and Richardson's office, talked the matter over with them and asked them if they had a deed, and they delivered the abstract to me and Mr. Manley examined it very thoroughly and came to the conclusion on account of the contracts that had been made that it would not pay us to go into the matter. The agreement was that if we did redeem we were to have the original owners' equity in consideration of twenty-five hundred dollars, and we came to the conclusion that it would not be good business, and we turned it down.''

He says that occurred possibly thirty days before the expiration of the redemption period and after the visit of the committee, and he repeats thus:

''After investigating it we came to the conclusion that it wasn't worth it, and on account of the contracts there and possible trouble we would get into; in other words, A. B. Manley's words were, 'Well, we are right in the same shoes those ladies are now, if we take it.' ''

6, 7. Counsel for plaintiffs has cited a wealth of authority on the well-known principle that an attorney or other person occupying a fiduciary relation to another and employed to defend title to real property cannot go out and buy in his own interest an adverse title, without having imputed to him a trust in favor of his client. The Circuit Court in rendering the decree of foreclosure applied these principles in favor of the plaintiffs, not only declaring the trust, but also executing it by setting aside the deeds procured by the defendant attorneys and declaring the present plaintiffs to be the absolute owners of the property, subject, of course, to the lien of the mortgage which they had themselves contracted to pay, and to the lien of the $2,000 which they admitted they had received from the defendants. Thus they were fully restored to their own. The confidential relation and its abuse had been worked out to final solution and merged in the decree. This answers counsel's Socratic argument:

"If the question of duty of attorneys to client is not in this case, when did it drop out?"

The relation alluded to was considered adjudicated and terminated by the decree. That determination of the court in ordering a conveyance to plaintiffs of the King interest and that derived from the Trust Company gave back to the plaintiffs all that they ever parted with to anyone by reason of the alleged fraud. Its consequences were wiped out. There was thereafter no trust relation between them and their former attorneys, the present defendants. Thenceforward they dealt not in a confidential relation but at arm's-length, if not at swords' points. The plaintiffs had ample opportunity to do equity by paying the amount they justly and admittedly owed for the money they had received from the defendants and upon the mort-

gage. That the attorneys could buy the mortgage is taught by *McKenna* v. *Van Blarcom,* 109 Wis. 271 (85 N. W. 322, 83 Am. St. Rep. 895). This was not inequitable, because it would cost the plaintiffs no more to pay to the attorneys than it would to the original creditor. The authorities cited by the plaintiffs would have been applicable if the attorneys had bought the Lumsden mortgage at a discount and had undertaken to charge their clients for the full face of it. No showing of such a condition exists. In brief, the decree in foreclosure settled the rights of the parties and gave ample opportunity to the plaintiffs to perform their part of it. They did not perform, and the defendants had the right as antagonistic parties, and not standing in any confidential relation to the plaintiffs, to collect their money in the ordinary process of the law. The testimony fails to show that they did anything during the redemption period to prejudice the right of redemption. They violated no confidence in asserting the right the decree gave them. The plaintiffs have failed to do the equity required of them and must take the consequences which the plain letter of the statute visits upon a judgment debtor who does not pay.

The counsel for the plaintiffs murmurs in the petition for rehearing to the effect that when the latter applied for a new loan they had an equity in the land worth $18,000 and when the proceedings terminated they had only $2,000 and the defendants had the land. The fallacy of this argument lies in the assumption that the residue of the estate of the plaintiffs was of that value. It is true the Circuit Court signed a finding of fact to that effect in the foreclosure suit. Instead, however, of impressing a lien upon the land in favor of these plaintiffs and against the present defendants for that amount, the trial court returned to the plaintiffs here the land itself and gave a lien to the

other parties for the amount of their claims.  Whatever the value was, therefore, the plaintiffs had it all. In judicial proceedings the ultimate test of values is a fairly conducted sale under process of court.  Judged by that standard, the assumption of a value of $18,000 is refuted in the present juncture and the argument fails.

It is a matter of regret that the plaintiffs were not able to pay their debts and, as often happens, have lost their property; but the record shows nothing to avert that result.  We adhere to the former opinion.

REHEARING DENIED.